UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:  

Anita M. Carow,

        Debtor.

_____/

Anita M. Carow,

        Plaintiff,

vs.

Chase Student Loan Service,

        Defendant.

_____/

Bankruptcy No. 10-30264
Chapter 7

Adversary No. 10-7011

**MEMORANDUM AND ORDER**

This adversary proceeding was commenced by Plaintiff/Debtor Anita M. Carow by Complaint filed May 19, 2010. Debtor seeks a determination that the loans underlying her debt to Defendant Chase Student Loan Service (Chase) are subject to discharge in this Chapter 7 case. Specifically, Debtor argues the loans are not excepted from discharge because they do not constitute qualified educational loans as defined by 11 U.S.C. § 523(a)(8). By Answer filed June 17, 2010, Chase denies Debtor is entitled to the relief she requests. The parties filed a Joint Stipulation of Uncontested Facts on September 23, 2010.

The matter was tried on September 29, 2010. From the stipulated facts and evidence presented at trial, the Court makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

Debtor attended Bismarck State College from 2004 to 2007 and University of Mary from 2008 to 2009. She received financial aid through the financial aid offices of each school. Debtor described the process to get loans through the schools' financial aid offices. She testified she first had to fill out a Free Application for Federal Student Aid (FAFSA). The form asked if she was a dependant, if she had any children, what her income was for the previous tax year, whether she would be attending school full or part time, and whether she would live on campus.

Debtor also sought additional sources of financial aid. She testified that she applied for a loan with Wells Fargo, but she did not qualify because of her credit score. Next, she applied with Chase. Debtor testified that she called customer service, and the Chase representative took her information, ran her credit score, and Debtor qualified for a loan without a cosigner. She sent in her application, and she was told she needed to submit her class schedule and expected graduation date.

Debtor ultimately received four loans from Chase, and is obligated to Chase on the loans as follows:

| Promissory Note Date | Original Principal Sum | Remaining Amount Due[1] |
|---|---|---|
| 10/11/06 | $6,000.00 | $8,518.37 |
| 11/3/06 | 3,500.00 | 4,879.95[2] |
| 1/2/07 | 1,221.00 | 1,627.27 |
| 5/5/08 | 18,450.00 | 23,023.10 |

---

[1] The remaining amounts due include accrued interest as of March 21, 2010, with the exception of the debt on the November 3, 2006, promissory note which is inclusive of interest as of March 22, 2010.

[2] The joint stipulation of uncontested facts lists the remaining amount due as "$4,879.9". This is an obvious but minor error. The Court finds the least possible harm to either party in determining the missing final digit to be a 5.

2

The first three loans were for Debtor's education at BSC and the last one was for her education at University of Mary. The parties stipulated that none of these loans were made, insured, or guaranteed by a governmental unit or a nonprofit institution, and do not represent obligations to repay funds received as an educational benefit, scholarship or stipend under 11 U.S.C. § 523(a)(8)(A)(ii). The parties further stipulated that the loans were obtained by Debtor to pay educational expenses, and the proceeds were used for that purpose.

The loan application/promissory note for each loan was the same. Each included a line for the loan amount requested, noting that it was "[l]imited to the amount of qualified education related expenses." The credit agreement includes a term which provides:

> You certify that the proceeds of this loan will be used by the student borrower for qualified educational related expenses, at the school named, and for the loan period stated, on this Agreement. You understand that you must immediately repay any funds you received which cannot reasonably be attributed to meeting the student borrower's educational expenses related to attendance at the school named on this Agreement for the loan period requested.

Consistent with the parties' stipulated facts, Debtor testified that she used both her federal student loans and her Chase loans for educational expenses and living expenses while she attended school. She comingled the federal loan proceeds and Chase loan proceeds in one account and did not keep an accounting of how much went toward particular expenses.

Jeff Jacobs, the financial aid director at BSC, testified that Debtor received the maximum federal loan amount for which she was eligible. He stated that federal law provides a formula for whether a loan is "qualified," and qualified educational loans can only be certified up to the amount of the cost of attendance.

3

Dave Hanson is the associate director of financial aid at University of Mary. He testified that Debtor was awarded the maximum federal loan amount for which she was eligible and that Chase's loans could not have been certified because they were above and beyond Debtor's eligibility.

Deborah Kirsling is a senior bankruptcy adversary analyst for Chase. She testified that Chase's due diligence includes determining the borrower's term in school and obtaining a copy of the borrower's class schedule. She testified that to her knowledge, Chase does not consider a borrower's actual budget, expenses or additional financial aid when it loans money. Although the loan application does not specifically ask about grants or other loans a borrower is receiving, the loan application does ask about annual salary and additional income. Debtor did not list her federal student loans as a source of income on her Chase loan applications. Kirsling testified that Chase does not contact a borrower's schools regarding loan eligibility and did not request certification of Debtor's loans.

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 16, 2010.

## II. CONCLUSIONS OF LAW

One of the fundamental goals of the Bankruptcy Code is to provide debtors with a fresh start. See Grogan v. Garner, 498 U.S. 279, 286-87 (1991) ("This Court has certainly acknowledged that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'") (citing Local Loan Co. v. Hunt, 292 U.S. 234 (1934)). The Code effectuates the fresh start by granting the honest but unfortunate debtor a discharge of certain debts. Grogan, 498 U.S. at 286.

4

Consistent with the fresh start policy of the Code, exceptions to discharge are narrowly construed against a creditor and liberally in a debtor's favor. Islamov v. Ungar (In re Ungar), 429 B.R. 668 (B.A.P. 8th Cir. 2010) (citing Caspers v. Van Horne (In re Van Horne), 823 F.2d 1285, 1287 (8th Cir. 1987).

Under section 523(a)(8), except in cases of undue hardship, a bankruptcy discharge does not discharge a debtor form any debt for:

- (A) (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

    (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

- (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8).

For purposes of section 523(a)(8), a "qualified education loan" is defined as:

- (1) Qualified education loan.–The term "qualified education loan" means any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses-

    - (A) which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred,

    - (B) which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and

    - (C) which are attributable to education furnished during a period during which the recipient was an eligible student.

5

>   Such term includes indebtedness used to refinance indebtedness which qualifies as a qualified education loan.

26 U.S.C. § 221(d)(1).

>   "Qualified higher education expenses" are defined as:

>   (2)  Qualified higher education expenses.–The term "qualified higher education expenses" means the cost of attendance (as defined in section 472 of the Higher Education Act of 1965, 20 U.S.C. 1087 ll , as in effect on the day before the date of the enactment of the Taxpayer Relief Act of 1997) at an eligible educational institution[.]

26 U.S.C. § 221(d)(2).

>   The "cost of attendance" for a student in Debtor's situation means:

>   (1) tuition and fees normally assessed a student carrying the same academic workload as determined by the institution, and including costs for rental or purchase of any equipment, materials, or supplies required of all students in the same course of study;

>   (2) an allowance for books, supplies, transportation, and miscellaneous personal expenses, including a reasonable allowance for the documented rental or purchase of a personal computer, for a student attending the institution on at least a half-time basis, as determined by the institution;

>   (3) an allowance (as determined by the institution) for room and board costs incurred by the student which-

>>   (A) shall be an allowance determined by the institution for a student without dependents residing at home with parents;

>>   (B) for students without dependents residing in institutionally owned or operated housing, shall be a standard allowance determined by the institution based on the amount normally assessed most of its residents for room and board; and

>>   (C) for all other students shall be an allowance based on the expenses reasonably incurred by such students for room and board[.]

20 U.S.C. § 1087ll.

6

Debtor argues that because Chase did not assess Debtor's need through the formulation of a budget, the loans were not "qualified education loans" and are therefore dischargeable. In so arguing, Debtor ignores the detailed definitions provided for making this determination.

The "cost of attendance" means the amount determined by the institution for tuition and fees plus an allowance for books, supplies, transportation, room and board, and miscellaneous personal expenses. 20 U.S.C. § 1087ll. Although there was testimony that Debtor borrowed the maximum amount of federal student loans for which she was eligible, there is no evidence as to what each educational institution attended by Debtor deemed to be reasonable allowances for the enumerated expenses. Moreover, Debtor certified on each promissory note that she would use the proceeds for qualified higher education expenses or for costs associated with her attendance at school. She stipulated and testified that she obtained and used the Chase loans to pay educational and living expenses. In other words, she used the Chase loans to fund her "cost of attendance." As such, the Chase loans were used for "qualified higher education expenses" and are "qualified education loans" as contemplated by section 523(a)(8)(B).

Moreover, even if the loans were not a qualified educational loan as defined in 26 U.S.C. § 221(d)(1) for purposes of section 523(a)(8), subsection (a)(8)(ii) provides that it is enough that the debt at issue be "an obligation to repay funds received as an educational benefit." 11 U.S.C. § 523(a)(8)(A)(ii).[3] This section of the Code was revised by Congress in 2005 as part of the

---

[3] For reasons that cannot be explained, Chase stipulated that the loans at issue do not represent obligations to repay funds received as an educational benefit under section 523(a)(8)(A)(ii). At the hearing, however, Chase argued the opposite – that the funds Debtor received are indeed nondischargeable under section 523(a)(8)(A)(ii) and cited cases for support for that proposition. Fortunately for Chase, parties cannot stipulate to legal conclusions. Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C., 408 B.R. 90, 95 (Bankr. S.D.

Bankruptcy Abuse Prevention and Consumer Protection Act and "must be read as encompassing a broader range of educational benefit obligations." Sensient Technologies Corp. (In re Baiocchi), 389 B.R. 828, 831-32 (Bankr. E.D. Wis. 2008). The Code does not define the term "educational benefit," but Congress has expanded the scope of section 523(a)(8) through successive amendments. Roy v. Sallie Mae (In re Roy), 2010 WL 1523996, at *1 (Bankr. D.N.J. April 15, 2010).

     Debtor failed to establish that the debt to Chase is not an obligation to repay funds received as an "educational benefit." As discussed above, Debtor certified on each promissory note that she would use the proceeds for qualified higher education expenses or for costs associated with her attendance at school. She stipulated and testified that she obtained and used the Chase loans to pay educational and living expenses. Given the breadth afforded to the phrase "educational benefit," these facts clearly establish that the Chase loans were used to provide Debtor an educational benefit. See In re Baiocchi, 389 B.R. at 832 (funds a debtor received from an employer to attend law school provided an educational benefit); see also Skipworth v. Citibank Student Loan Corp. (In re Skipworth), No. 09-80149-JAC-7, 2010 WL 1417964, at *2 (Bankr. N.D. Ala. March 2, 2011) (a loan from Citibank to pay for the debtor's bar review course constituted funds received as an educational benefit).

     Based on the foregoing, the loans Chase made to Debtor constitute a debt for educational loans that are qualified education loans under 11 U.S.C. § 523(a)(8)(b). Further, they are an obligation to repay funds received as an educational benefit under 11 U.S.C. §523(a)(8)(A)(ii). As

---

Tex. 2009); In re Reis, 274 B.R. 46, 47 n.2 (Bankr. D. Mass. 2002) (citing TI Federal Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995).

such, Debtor's outstanding obligation to Chase in the total amount of $38,048.69, plus accrued interest since March 21, 2010, is nondischargeable under 11 U.S.C. § 523(a)(8).

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

Dated this March 2, 2011.

**WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT**